UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
CLARENCE SMITH-BEY,                 )
                                    )
          Plaintiff,                )
                                    )
     v.                             )   Civil Action No. 09-0702 (PLF)
                                    )
CCA/CTF, *et al.*,                  )
                                    )
          Defendants.               )
_____)


OPINION

Plaintiff Clarence Smith-Bey is an inmate at the Correctional Treatment Facility ("CTF"), a jail facility located in Washington, D.C., and privately operated by Corrections Corporation of America ("CCA") pursuant to a contract with the District of Columbia. Food services at CTF are provided by Aramark Food Corporation ("Aramark").[1] Mr. Smith-Bey has named CTF, CCA, and Aramark as defendants in this case, along with CTF/CCA employees Desandra Peace, Ifeanyi Akas, Shameka Bivens, and Walter Fulton.

Mr. Smith-Bey, proceeding *pro se*, alleges that the kitchen at CTA is so poorly maintained and infested with vermin that being forced to eat food prepared there amounts to cruel and unusual punishment inflicted in violation of the Eighth Amendment to the United

_____

[1] Mr. Smith-Bey identified CTF's food service provider as "Aramark Food Corp." in his complaint. See Complaint at 1. According to Aramark's counsel, however, there is no entity known as "Aramark Food Corp." See Aramark Food Corp.'s Motion to Dismiss and/or Quash Service at 1. Mr. Smith-Bey therefore has moved to amend his complaint to state claims against "Aramark Correctional Services, LLC" instead of "Aramark Food Corp." Plaintiff's Motion to Correct Title of Defendant[']s Name at 1. Because the Court dismisses all of Mr. Smith-Bey's claims on other grounds, any dispute over Aramark's correct name is moot.

States Constitution. He brings his claims under 42 U.S.C. § 1983 and seeks injunctive relief and monetary damages in the amount of $750,000. Two motions to dismiss, one brought by Aramark and the other by all defendants except Aramark ("the CCA defendants"), are currently pending before the Court. Also pending are the following motions filed by Mr. Smith-Bey: (1) a motion "to correct title of defendant[ Aramark's] name," (2) a motion "to grant relief from CCA/CTF and Aramark Correction[al] Services," and (3) a motion "for this Court to respond." For the reasons discussed below, the Court will grant the motion to dismiss filed by the CCA defendants and deny all other pending motions as moot.[2]

I.  BACKGROUND

According to the complaint, on February 3, 2009, Mr. Smith-Bey was eating his dinner in CTF when he found a dead cockroach in his food. See Compl. at 5. In accordance with the prison's internal grievance procedures, he submitted an "informal resolution form" to prison administrators on February 6, 2009, stating that "I had a roach in my beans and Spanish rice Tuesday. I did tell the officer, I threw up my food by putting my right index finger down my throat. The officer['s] name is Officer Akas." Def. Mot., Exhibit 1, Attachment B.

Mr. Smith-Bey alleges that on February 18, 2009, he found a second dead cockroach in his food. He submitted a second informal resolution form, stating, "I had a dead roach in my oatmeal, I notice[d] it after eating half of the oatmeal. I almost ate the roach. This is

---

[2]  The papers submitted by the parties and reviewed by the Court include: plaintiff's complaint ("Compl."), the CCA defendants' motion to dismiss ("Def. Mot."), plaintiff's "memorandum of points and authorities to support civil complaint" ("Pl. Mem."), plaintiff's memorandum of points and authorities in support of his motion to "challenge the oaths of the affidavit" ("Pl. Resp."), and plaintiff's "motion to grant relief from CCA/CTF and Aramark Correction Services LLC" ("Mot. for Relief").

the second time. Officer Peace witness[ed] the roach on the spoon when I showed her." Def. Mot., Exhibit 1, Attachment C. A prison official responded on the same form by noting that "Terminix pest control spray[s] in the culinary area once a week. All food trays are washed at 140 to 160 degrees. All tray carts are washed with hot water and liquid sanitizer. And the culinary area is cleaned and sanitize[d] after every meal line." See id.

On February 26, 2009, Mr. Smith-Bey submitted a third informal resolution form, stating that "[o]n Feb. 18 I was eating my oatmeal and discovered a [r]oach after eating half of the oatmeal. I showed the roach to Officer Peace, she made a [n]otation in the log [b]ook. This was the second time in two weeks period. The [f]irst time was Feb. 3, the second was Feb. 18, 200[9]. The [f]irst time [was] officer Akas." Compl., Ex. 2 at 1. A prison official responded on the same form by noting, "I apologize for this unfortunate incident. We continue to work with Terminex Weekly (the[y] come to spray and fog the culinary on Wednesday). Inmates who experience problems [] are certainly not expected to eat the food. Please show the tray to the officer as you did and you will be re[-]served. Thank you for making us aware of this incident." Id. at 2.

Pursuant to CTF policy, the next step in the grievance process after submitting an informal resolution form is submission of a formal grievance. See Def. Mot., Exhibit 1 ¶ 8. Mr. Smith-Bey did not complete a formal grievance form after submitting any of the three informal resolution forms that he filled out, but the parties disagree as to why. The defendants contend that plaintiff was offered a formal grievance form, but declined to accept it. See id. ¶ 15. Mr. Smith-Bey alleges that he was never given the form although he requested it on at least three

separate occasions. Pl. Resp. at 7. He maintains that CTF intentionally prevented him from completing the administrative process. Id., Exs. C-E.

Having failed, for whatever reason, to exhaust CTF's internal grievance process, Mr. Smith-Bey filed the complaint in this action on April 15, 2009. The first part of his complaint appears on a form provided for use by prisoners who wish to allege a violation of their civil rights. See Compl. at 1. In response to the prompt, "State here [as] briefly as possible the facts of your case," Mr. Smith-Bey wrote:

> On Feb. 3, [20]09 I was eating Dinner, after eating halfway through my meal I located a dead roach in my beans. I told Officer Akas, and he said the roaches are real bad in the kitchen.
>
> On Feb. 18th I was eating my breakfast, and after eating almost all of my oatmeal, a roach dead was found in my food. This was a large roach, I showed it to Officer Peace who was on duty. She log it in the logbook, and [two other inmates] also are witness[es].

Id. at 5. In a handwritten complaint attached to his form complaint, Mr. Smith-Bey again described the two occasions on which he had allegedly discovered a roach in his food, but this time expanded his claims to include complaints about the condition of the kitchen: "The food cart that house[s] the food trays, it should have a door that keeps the air and roaches out. The mice and roaches come all upon the assembly line when preparing the food." Id. at 7.

Attached to the complaints was a handwritten letter addressed to this Court by Mr. Smith-Bey. In that letter the plaintiff did not mention finding a dead roach in his food, but instead made even broader claims regarding the condition of the kitchen at CTF: "The culinary is a health hassard [sic] w/ roaches, mice, bugs, foul smell. No regard for HACCP guidelines. Temperature log/guidelines. Eating equipment a disaster." Compl., Ex. A at 1. He added,

4

"Roaches and mice and other bugs still control the kitchen, along with poor food handling skills." Id.

In July of 2009, Mr. Smith-Bey filed a motion "to grant relief from CCA/CTF and Aramark Correction Services LLC" in which his claims evolved further. He contended that "the kitchen is infested with insects, roaches, flies, spiders, daddy long legs, mice, rats, etc. The insects get in the food cart, and they also climb up on the assembly line where the food is being prepared. . . . CCA officers are right there to witness the cruel behavior that continues . . . daily." Mot. for Relief at 1.

## II. DISCUSSION

In their motion to dismiss, the CCA defendants make three arguments. First, they argue that Mr. Smith-Bey's claims must fail because he has not exhausted available administrative remedies. Def. Mot. at 6-8. Second, they argue that the plaintiff has failed to allege facts constituting an Eighth Amendment violation. Id. at 8-11. Third, they argue that even if the plaintiff's Eighth Amendment rights were violated, he is not entitled to money damages because he did not suffer physical injury. Id. at 11-12. Because the Court concludes that the first two issues are dispositive in this matter, it does not address the third.

### A. Failure to Exhaust Administrative Remedies

The defendants contend that by not completing CTF's internal grievance process with regard to any of his three informal complaints, Mr. Smith-Bey failed to exhaust his administrative remedies. Def. Mot. at 7-8. The plaintiff counters that defendants' own acts and omissions are to blame for his inability to exhaust, and that his claims therefore should not be

5

rejected on that ground. Pl. Resp. at 5. The Court finds this dispute irrelevant, however, because Mr. Smith-Bey has not even initiated the grievance process with regard to his most serious claims.

1. Standard of Review

The defendants raise the exhaustion issue in their motion to dismiss, but should have done so in a motion for summary judgment. Failure to exhaust "is an affirmative defense," and "inmates are not required to specially plead or demonstrate exhaustion in their complaints." Jones v. Bock, 549 U.S. 199, 216 (2007). Where, as here, the failure to exhaust is not apparent from the face of the complaint, the defense must be raised and supported with record evidence on a motion for summary judgment. See, e.g., Shane v. United States, Civil Action No. 07-0577, 2008 WL 101739, at *7 (D.D.C. Jan. 9, 2008).

In this case, the defendants have attached to their motion to dismiss various affidavits and other documents supporting their contention that Mr. Smith-Bey did not follow the prison's procedures for filing grievances. See, e.g., Def. Mot., Ex. 1, Attachments A-D. Mr. Smith-Bey has responded by filing a slew of opposing documents, including a "motion to challenge the oaths of the affidavit" in which he attempts to refute point-by-point various statements made by Joyce Allen, CTF's grievance officer, in an affidavit submitted by the defendants. See Pl. Resp. at 1-9. He has also submitted in support of his arguments regarding exhaustion a letter from another inmate and a copy of an "inmate request slip" purporting to show that Mr. Smith-Bey requested formal grievance forms from CTF on August 2, 2009. See

id., Exs. C, F. Under such circumstances, the Court will treat the pending motion to dismiss as a motion for summary judgment. See FED. R. CIV. P. 12(d).

"[W]here both parties submit matieral outside the pleadings and the parties are not taken by surprise or deprived of a reasonable opportunity to contest facts averred outside the pleadings and the issues involved are discrete legal issues, the court may convert [a motion to dismiss] to a motion for summary judgment without providing notice or the opportunity for discovery to the parties." Citizens for Responsibility & Ethics in Washington v. Bd. of Governors of the Fed. Reserve Sys., 669 F. Supp. 2d 126, 128-29 (D.D.C. 2009) (internal quotation marks and citation omitted). In this instance, the parties would not be aided by an additional opportunity to submit documents in support of their arguments; both plaintiff and defendants have already filed supporting exhibits, and the only facts upon which the Court must rely to reach its decision are not in dispute. See infra at 8.

Summary judgment shall be granted if the pleadings ... "and any affidavits show that that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). Material facts are those that "might affect the outcome of the suit under the governing law. . . ." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). When considering a summary judgment motion, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Id. at 255; see also Washington Post Co. v. Dep't of Health and Human Servs., 865 F.2d 320, 325 (D.C. Cir.1989). The non-moving party's opposition, however, must consist of more than mere unsupported allegations or denials and must be supported by affidavits or other competent

7

evidence setting forth specific facts showing that there is a genuine issue for trial. See FED. R. CIV. P. 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

2. Plaintiff's Failure to Exhaust Most of His Claims

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The exhaustion requirement of Section 1997e(a) is mandatory and "applies to all prisoners seeking redress for prison circumstances or occurrences." Porter v. Nussle, 534 U.S. 516, 520 (2002). Section 1997e(a) "afford[s] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case," and, where possible, to "satisfy the inmate, thereby obviating the need for litigation." Id. at 524-25. If an inmate fails to exhaust one of more discrete claims, the PLRA requires only that the unexhausted claims be dismissed, not the complaint in its entirety. Jones v. Bock, 549 U.S. at 220-22.

While Mr. Smith-Bey has vehemently denied the defendants' claims that additional, unexhausted administrative remedies were available to him, see Pl. Resp. at 1-9, he does not dispute the defendants' descriptions of the three informal resolution forms that he completed or the accuracy of the copies of those forms that are attached to the defendants' motion. See Def. Mot., Ex. 1, ¶¶ 12-14; id., Ex. 1, Attachments B-C. Indeed, Mr. Smith-Bey himself attached a copy of the third of those forms to his complaint. See Compl., Ex. 2. It is evident from the face of those informal resolution forms that the plaintiff only initiated the

8

grievance process with respect to his complaints about finding a cockroach in his food on two occasions. He never presented to prison administrators his broader claims regarding the litany of unsanitary conditions that he now alleges are present in the prison's kitchen.

Mr. Smith-Bey's complaint and subsequent filings make a large number of claims that were not raised or even hinted at in his informal grievances. Such claims include his contentions that (1) a prison official acknowledged that "the roaches are bad" in the kitchen and told the plaintiff that if he did not like the food in the kitchen, he could purchase food from the commissary kitchen instead, Mot. for Relief at 1; (2) CTF's kitchen is infested with cockroaches, mice, spiders, and other vermin, id.; (3) the food at CTF is contaminated, tastes bad, and is often cold, Pl. Mem. at 2; (4) the kitchen does not conform to applicable regulations and is a health hazard, Compl., Ex. A; and (5) the food is prepared in generally unsanitary conditions and the kitchen workers disregard sanitation procedures. Pl. Mem. at 2.

Mr. Smith-Bey's modest complaints about two cockroaches were not sufficient to put prison officials on notice as to the much graver claims that he has raised in his complaint and subsequent filings. "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Jones v. Bock, 549 U.S. at 218. Here, the best indicator of the level of detail required was the informal grievance form itself, which asked the plaintiff for a "Description of issue, problem, and solution you suggest." See Compl., Ex. B. By describing only the two occasions when he allegedly found a cockroach in his food and not making any of his broader claims about the overall food and health conditions, Mr. Smith-Bey conveyed that the only "issue" or "problem" he wanted

9

prison officials to address involved the two instances of a cockroach finding its way into his food. Nor did he offer a solution, as the form invited him to do, that would have put the defendants on notice as to the breadth of the claims that he now makes before this Court. To the extent that Mr. Smith-Bey's informal resolution forms did not give prison officials the opportunity to address his claims internally as the PLRA envisions, it would be inappropriate for the Court to address those claims here. Thus, the only claims brought by Mr. Smith-Bey that are properly before this Court are his allegations that he found a cockroach in his food on two occasions.

With respect to those claims, there is a factual dispute as to whether the plaintiff exhausted all available administrative remedies. See Def. Mot. at 4; Pl. Resp. at 2 (insisting that prison administrators withheld the necessary grievance forms from him). The Court therefore declines to resolve those claims by relying on the PLRA's exhaustion requirement, and instead will address the merits of plaintiff's constitutional claims, dismissing them because they fail to rise to the level of an Eighth Amendment violation.

*B. The Plaintiff's Remaining Claims*

The defendants have moved to dismiss Mr. Smith-Bey's remaining claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, arguing that the claims, even if true, do not allege an Eighth Amendment violation. Def. Mot. at 8. The defendants further contend that even if Mr. Smith-Bey's Eighth Amendment rights were violated, he is not entitled to money damages because he has suffered no physical injury. The Court agrees with the first argument and so need not address the second.

1. Standard of Review

The plaintiff's complaint was filed *pro se*. Complaints filed without the assistance of counsel must be construed liberally. See Richardson v. United States, 193 F.3d 545, 548 (D.C. Cir. 1999) (citing Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (per curiam) (holding allegations contained in a prisoner's *pro se* complaint to less stringent standards than pleadings written by counsel in reversing a dismissal for failure to state a claim)).

On a motion to dismiss under Rule 12(b)(6), which provides for the dismissal of a complaint in the event that it "fail[s] to state a claim upon which relief can be granted," the Court must accept as true all of the factual allegations contained in the complaint. See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). The complaint "is construed liberally in the [plaintiff's] favor, and [the Court should] grant [the plaintiff] the benefit of all inferences that can be derived from the facts alleged." Kowal v. MCI Commc'ns Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994). Nevertheless, the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions. See id.; see also Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949-50 (2009).

2. Absence of an Eighth Amendment Violation

Establishing an Eighth Amendment violation requires an objective showing that the deprivation alleged is "sufficiently serious," and a subjective showing that prison officials had a "sufficiently culpable state of mind," one marked by "deliberate indifference." Farmer v. Brennan, 511 U.S. 825, 834 (1994). Prison authorities are required to "provide humane conditions of confinement" and to "ensure that inmates receive adequate food." Id. at 832.

Prisons must serve "nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it." French v. Owens, 777 F.2d 1250, 1255 (7th Cir. 1985) (quoting Ramos v. Lamm, 639 F.2d 559, 575 (10th Cir. 1980)). Not just any unpleasant condition violates the Eighth Amendment, however; the condition must be "so grave that it violates contemporary standards of decency." Scott v. District of Columbia, 139 F.3d 940, 943 (D.C. Cir. 1998) (quoting Helling v. McKinney, 509 U.S. 25, 36 (1993)).

The Court finds that plaintiff fails to allege a sufficiently serious deprivation that would rise to the level of an Eighth Amendment violation. While certainly unpleasant, two instances of discovering cockroaches in one's food do not rise to the level of a sufficiently serious deprivation. See Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir. 1985) ("The fact that the food occasionally contains foreign objects or sometimes is served cold, while unpleasant, does not amount to a constitutional deprivation."); see also Lunsford v. Reynolds, 376 F.Supp. 526, 528 (W.D.Va. 1974) ("Occasional incidents of a foreign object contained in food, while regrettable, does not present a question of constitutional proportion."), Allen v. Maryland, Civil Action No. 10-0353, 2010 WL 727753, at *1 (D.Md. Feb. 25, 2010) ("To state a constitutional violation for unsanitary food preparation an inmate must do more than allege a single or isolated incident of contamination."). Consequently, Mr. Smith-Bey's claims will be dismissed for failure to state a claim.

## III. CONCLUSION

For the foregoing reasons, the Court will grant the CCA defendants' motion to dismiss the complaint in this case, which has been partly converted into a motion for summary judgment. All other pending motions will be denied as moot. An Order consistent with this Opinion shall issue this same day.

SO ORDERED.

/s/_____
PAUL L. FRIEDMAN
United States District Judge

DATE: March 29, 2010